**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

RENE CANTARERO, DANILO FLORES, MICHAEL A. DONZA, DAVID CANTARERO, and VALENTINO NAVARRETE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

SETTING SUN TRANSPORTATION LLC, METRO PAVING, LLC, RUTTURA & SONS CONSTRUCTION CO., INC., GALVIN BROS., INC., PHILIP ROSS INDUSTRIES, INC., THE LANDTEK GROUP, INC., AURORA CONTRACTORS, INC., and DENNIS KELLERMAN,

Defendants.

Case No. 26-cv-7094

**COLLECTIVE ACTION COMPLAINT**

Plaintiffs, complaining of the Defendants, allege and say:

**PRELIMINARY STATEMENT**

1. Plaintiffs Rene Cantarero, Danilo Flores, Michael A. Donza, David Cantarero, and Valentino Navarrete bring this collective action against Defendants Setting Sun Transportation LLC ("Setting Sun"), Metro Paving, LLC ("Metro Paving"), Ruttura and Sons Construction Co., Inc. ("Ruttura"), Galvin Bros., Inc. ("Galvin"), Philip Ross Industries, Inc. ("Philip Ross"), The LandTek Group, Inc. ("LandTek"), Aurora Contractors, Inc. ("Aurora"), and Dennis Kellerman (collectively, "Defendants"; Setting Sun, Metro Paving, Ruttura, and Kellerman, collectively, the "Employer Defendants"; and Ruttura, Galvin, Philip Ross, LandTek, and Aurora, collectively, the "Upper-Tier Contractor Defendants") to recover unpaid prevailing wages owed to Plaintiffs and similarly situated drivers who performed work on public works projects, including school, municipal road, park, and Belmont Park Redevelopment Project work in Nassau and Suffolk Counties, and, upon information and belief, on covered private projects

within the meaning of New York Labor Law § 224-a, including hospital projects, and to recover overtime compensation owed to Plaintiffs by the Employer Defendants. Plaintiffs were paid at rates substantially below the prevailing wage rates mandated by New York Labor Law Article 8 and/or § 224-a, were denied overtime compensation properly calculated on those prevailing wage rates as required by the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), and were not provided the wage notices and accurate wage statements required by NYLL § 195.

2. Although Plaintiffs spent approximately 80 to 90 percent of their working time on prevailing wage projects, the Employer Defendants paid them the prevailing wage rate for only a fraction of their hours, and paid none of their overtime hours at a prevailing wage overtime rate.

3. The Employer Defendants (Setting Sun, Metro Paving, Ruttura, and Kellerman) employed Plaintiffs and paid them a split rate. They credited only part of each workday at a rate they labeled "PW Rate," paid the remaining hours at far lower regular rates, calculated overtime on those lower rates, and paid no supplemental benefits. Defendant Kellerman owns and operates Setting Sun and Metro Paving and controlled Plaintiffs' schedules and rates of pay. Upon information and belief, Defendant Ruttura or its principals are part owners of Metro Paving, and Ruttura operates with Setting Sun and Metro Paving as a single integrated enterprise.

4. The Upper-Tier Contractor Defendants (Ruttura, Galvin, Philip Ross, LandTek, and Aurora) held contracts for the covered projects, as general contractors or upper-tier subcontractors, and engaged Setting Sun and Metro Paving, directly or through other subcontractors, to perform the work. Upon information and belief, each of those contracts required payment of prevailing wages and supplements to every worker performing covered

work. Plaintiffs are third-party beneficiaries of those contracts, and the Upper-Tier Contractor Defendants are liable for the prevailing wages Plaintiffs were not paid. Ruttura is in both groups: it is an Employer Defendant through its ownership interest in, and integration with, Metro Paving, and an Upper-Tier Contractor Defendant through its own contracts on covered projects.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, as this action arises under the FLSA, 29 U.S.C. §§ 201 et seq.

6. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendants reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in West Babylon, New York, and elsewhere in Nassau and Suffolk Counties, within the Eastern District of New York.

## PARTIES

8. Plaintiff Rene Cantarero is an individual who resides in Lindenhurst, New York, and who was employed by the Employer Defendants as a Heavy Construction Truck Driver from in or about 2017 through on or about January 8, 2026.

9. Plaintiff Danilo Flores is an individual who resides in Brentwood, New York, and who was employed by the Employer Defendants as a non-union Heavy Construction Truck Driver from in or about March 2020 through in or about May 2024.

10. Plaintiff Michael A. Donza is an individual who resides in Ridge, New York, and who was employed by the Employer Defendants as a non-union Heavy Construction Truck Driver from on or about March 20, 2021 through in or about December 2022, and as a non-union Laborer from in or about March 2023 through the end of the 2023 season. The Employer Defendants promised Plaintiff Donza a Local 1298 union book and retroactive pay for his 2023 Laborer hours and never paid the retroactive pay. Plaintiff Donza was the Employer Defendants' only non-union Laborer.

11. Plaintiff David Cantarero is an individual who resides in Brookshire, Texas, and who was employed by the Employer Defendants as a non-union Heavy Construction Truck Driver on a seasonal basis, including from on or about April 2023 through on or about December 23, 2023, and from on or about August 19, 2025 through at least September 22, 2025.

12. Plaintiff Valentino Navarrete is an individual who resides in Brentwood, New York, and who has been employed by the Employer Defendants as a non-union Heavy Construction Truck Driver from on or about June 22, 2024 through the present.

13. Defendant Setting Sun Transportation LLC is, upon information and belief, a New York limited liability company with a principal place of business located at 200 Cabot Street, West Babylon, New York 11704.

14. Defendant Metro Paving, LLC is, upon information and belief, a New York limited liability company with a principal place of business located at 500 Patton Avenue, West Babylon, New York 11704.

15. Defendant Ruttura and Sons Construction Co., Inc. is, upon information and belief, a New York corporation with a principal place of business located at 200 Cabot Street, West Babylon, New York 11704, the same address that Setting Sun lists on the wage statements it issued to Plaintiffs.

16. Defendant Galvin Bros., Inc. is, upon information and belief, a New York corporation with a principal place of business located at 149 Steamboat Road, Great Neck, New York 11024.

17. Defendant Philip Ross Industries, Inc. is, upon information and belief, a New York corporation with a principal place of business located at 88 Duryea Road, Melville, New York 11747.

18. Defendant The LandTek Group, Inc. is, upon information and belief, a New York corporation with a principal place of business located in Amityville, New York.

19. Defendant Aurora Contractors, Inc. is, upon information and belief, a New York corporation with a principal place of business located at 100 Raynor Avenue, Ronkonkoma, New York 11779.

20. Defendant Dennis Kellerman is an individual who resides in East Setauket, New York. Upon information and belief, Defendant Kellerman is an owner and operator of both Defendant Setting Sun and Defendant Metro Paving.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21. Plaintiffs bring their FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all non-union drivers, and Plaintiff Donza for his 2023

season as a non-union Laborer, who performed work for the Employer Defendants on projects subject to New York State prevailing wage requirements at any time during the three years prior to the filing of this Complaint through the date of final judgment in this action (the "FLSA Collective").

22. Plaintiffs and the members of the FLSA Collective are similarly situated in that they (a) performed work on public works projects, or covered private projects, subject to New York State prevailing wage requirements; (b) were classified and compensated by Defendants at rates below the applicable prevailing wage rates for their job duties; (c) were paid overtime, when paid at all, at one and one-half times those sub-prevailing rates rather than the prevailing rates to which they were entitled; and (d) were subject to the same policies, practices, and compensation scheme implemented by Defendants.

23. Plaintiffs request that the Court authorize notice to be sent to all members of the FLSA Collective pursuant to 29 U.S.C. § 216(b), and that the Court direct Defendants to produce contact information for all members of the FLSA Collective. Each Plaintiff will file a consent in writing to be a party to this action pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

24. The Employer Defendants are a paving, trucking, and construction operation that performs work on public works projects, and on privately owned construction projects receiving public funding or other public financial assistance, in the State of New York, including in Nassau and Suffolk Counties.

25. The Employer Defendants' projects on which Plaintiffs worked include, but are not limited to: public school projects, including the Polk Avenue School, Copiague Middle

School, Saw Mill Road School, Susan E. Wiley Elementary School, and the Manhasset High School baseball field; municipal road and park projects for Nassau County (including Grand Avenue in Baldwin), the Town of Hempstead, the Town of Oyster Bay (including Tobay Beach), the Village of Rockville Centre, and the Town of Brookhaven (including Martha Park); and the Belmont Park Redevelopment Project in Elmont, New York.

26. Each of the Upper-Tier Contractor Defendants held contracts on numerous public works projects on which Plaintiffs performed covered work through Setting Sun and/or Metro Paving. By way of example only, and based upon Plaintiffs' own work records and knowledge, those projects include the following:

27. Defendant Ruttura served as an upper-tier subcontractor on the Belmont Park Redevelopment Project in Elmont, New York, on which Plaintiffs Rene Cantarero and Donza performed covered work in or about September 2023, and on many other public works projects. Plaintiff Donza also performed covered work on school and municipal projects for Ruttura during the 2023 season. Upon information and belief, Ruttura's contracts on those projects required payment of prevailing wages and supplements to all workers performing covered work.

28. Upon information and belief, Defendant Aurora served as general contractor on the Belmont Park Redevelopment Project in Elmont, New York, and engaged Defendant Ruttura as a subcontractor, which in turn engaged Setting Sun and Metro Paving to perform the paving work. Plaintiffs Rene Cantarero and Donza performed covered work on that project, and Plaintiff Donza signed certified payroll records there. Upon information and belief, Aurora's contract required payment of prevailing wages and supplements to all workers performing covered work.

29. Defendant Galvin served as general contractor or upper-tier subcontractor on public works projects on which Plaintiff Rene Cantarero and other drivers performed covered work, including, by way of example only, a project at Pier 76 in Manhattan (April 2021), a Town of Oyster Bay project at 4 Alhambra Road, Massapequa (October 2021), the Stepping Stone Park project in Kings Point (June 2022), a project at Hempstead Lake State Park in West Hempstead (December 2022), and the Tully Park project in New Hyde Park (November 2024). Plaintiffs performed covered work on many more Galvin projects than those listed here. Upon information and belief, Galvin's contracts on those projects required payment of prevailing wages and supplements to all workers performing covered work.

30. Defendant Philip Ross served as general contractor or upper-tier subcontractor on public works projects on which Plaintiff Rene Cantarero and other drivers performed covered work, including, by way of example only, projects for the South Farmingdale Water District (August 2021), the Garden City Water District (November 2022), the Jericho Water District (June 2024), the Hicksville Water District (December 2024), and the Dix Hills Water District (May 2025). Plaintiff Rene Cantarero's work records alone include more than a dozen work tickets for Philip Ross projects, and Plaintiffs performed covered work on many more Philip Ross projects than those listed here. Upon information and belief, Philip Ross's contracts on those projects required payment of prevailing wages and supplements to all workers performing covered work.

31. Defendant LandTek served as general contractor or upper-tier subcontractor on public works projects on which Plaintiff Rene Cantarero and other drivers performed covered work, including, by way of example only, projects at Stimson Junior High School in Huntington Station (May 2021), Timber Point Elementary School in East Islip (July 2021), Memorial Field

in Mount Vernon (July 2022), Whitman Park in Melville (November 2024), and Manhasset High School (July and August 2025). Plaintiff Donza also performed covered work on LandTek projects during the 2023 season. Plaintiff Rene Cantarero's work records alone include more than 50 work tickets for LandTek projects, and Plaintiffs performed covered work on many more LandTek projects than those listed here. Upon information and belief, LandTek's contracts on those projects required payment of prevailing wages and supplements to all workers performing covered work.

32. Plaintiffs worked for the Employer Defendants in two job classifications, Heavy Construction Truck Driver and Laborer, as follows:

33. Plaintiffs Rene Cantarero, Flores, and Donza worked as Heavy Construction Truck Drivers, operating ten-wheelers with heavy-duty tagalong trailers and dump trucks to transport heavy machinery and equipment (not concrete) to and from Defendants' project sites. Plaintiffs Rene Cantarero and Flores performed this work throughout their employment, and Plaintiff Donza performed it from on or about March 20, 2021 through in or about December 2022.

34. Plaintiffs David Cantarero and Navarrete have worked as Heavy Construction Truck Drivers, spending approximately 25-30% of their working time moving heavy machinery and the other 70-75% hauling materials, including concrete, hot, broken, and raw asphalt, millings, RCA gravel, and topsoil.

35. Drivers hauling asphalt or concrete from commercial plants to public work sites in Nassau and Suffolk Counties within 50 miles are employed on public work within the meaning of NYLL § 220, and must be paid prevailing wages from the time loading begins until delivery is

complete, as the New York State Department of Labor has long interpreted § 220 and as NYLL § 220(3-a)(g) now provides.

36. Plaintiff Donza worked as a non-union Laborer, shoveling asphalt, during the 2023 season, before he received his Local 1298 union book.

37. Plaintiffs also performed work on hospital projects, some or all of which were, upon information and belief, subject to prevailing wage requirements.

38. The work performed by Plaintiffs was performed in direct support of, and was integral to, Defendants' public works projects and covered private projects subject to New York State prevailing wage laws.

39. Under the New York State Department of Labor's Article 8 prevailing wage schedules, including the schedule for District 4 (Nassau and Suffolk Counties, which share a single combined schedule), the truck-driving work performed by Plaintiffs Rene Cantarero, Flores, Donza, David Cantarero, and Navarrete is properly classified and compensated under the "Teamster – Delivery of Concrete, Heavy Construction" classification (Local 282), and the laboring work performed by Plaintiff Donza as an asphalt shoveler is properly classified and compensated under the "Laborer – Heavy & Highway" classification (Local 1298), Group 2.

40. At all relevant times, the prevailing wage rates and supplements published by the New York State Department of Labor for these classifications substantially exceeded the rates Defendants paid Plaintiffs. By way of example, as of July 1, 2026, the total hourly package for the Heavy Construction Truck Driver classification is $98.77 ($45.00 in wages plus $53.77 in

supplements), and the total hourly package for Laborer – Heavy & Highway, Group 2, is $102.52.

41. To the extent any of Defendants' projects, such as a hospital or other privately owned construction project, were not public work within the meaning of NYLL Article 8 but were privately owned construction projects that received public funds, subsidies, tax credits, or other public financial assistance meeting the coverage thresholds of NYLL § 224-a, such projects independently required payment of prevailing wages and supplements pursuant to § 224-a, which incorporates the prevailing wage requirements of NYLL §§ 220 and 220-b by reference.

42. Upon information and belief, Plaintiffs performed covered work for Defendants on numerous privately owned projects, including hospital projects such as the Mather Hospital and Southside Hospital projects, that were financed in substantial part with public funds or other public financial assistance and that met the coverage thresholds of NYLL § 224-a.

43. The Employer Defendants credited only a portion of Plaintiffs' straight-time hours, in many weeks as little as half, at a rate they labeled "PW Rate," and paid the remaining straight-time hours at substantially lower regular rates, generally between $20.00 and $30.00 per hour. The Employer Defendants paid all overtime hours at one and one-half times those lower regular rates, never at the prevailing wage rate, and paid no supplemental benefits or cash in lieu of benefits. During the 2023 season, the Employer Defendants paid Plaintiff Donza no prevailing wage rate for any of his hours.

44. For example, Defendants' wage statements to Plaintiff Rene Cantarero divided his hours among a "PW Rate," a regular rate, and an overtime rate.

a. From in or about September 2020 through May 2021, Defendants paid Plaintiff Rene Cantarero $73.93 per hour for a portion of his hours designated “PW Rate,” $27.00 per hour for his remaining straight-time hours, and $40.50 per hour for overtime hours.

b. From in or about June 2021 through December 2021, Defendants paid him $73.93 per hour for “PW Rate” hours, $30.00 per hour for remaining straight-time hours, and $45.00 per hour for overtime hours.

c. From in or about January 2022 through on or about January 8, 2026, Defendants paid Plaintiff Rene Cantarero a “PW Rate” of $73.93 per hour through in or about March 2024, $86.30 per hour from in or about March 2024 through December 2025, and $92.00 per hour in January 2026, for up to 40 hours per week, and paid any remaining straight-time hours at $20.00 per hour. Throughout that period, Defendants paid all of Plaintiff Rene Cantarero’s overtime hours at $30.00 per hour.

45. Defendants’ wage statements to Plaintiff David Cantarero divided his straight-time hours approximately equally between hours designated “PW Rate” and regular hours. In 2023, Defendants paid him $73.93 per hour for “PW Rate” hours and $24.00 per hour for regular hours; in 2025, Defendants paid him $86.30 per hour for “PW Rate” hours and $24.00 per hour for regular hours. Throughout his employment, Defendants paid Plaintiff David Cantarero’s overtime hours at $36.00 per hour.

46. Defendants divide Plaintiff Navarrete’s eight-hour base workday between hours designated as prevailing wage hours and hours paid at a lower regular rate, crediting approximately five hours per day at the designated prevailing wage rate in 2024, six in 2025, and seven in 2026, and never the full eight. Defendants paid Plaintiff Navarrete no prevailing wage

rate for weekend work on covered projects in 2024 and 2025, and pay his travel time at the lower regular rate.

47. The rate paid to Plaintiff Flores was, upon information and belief, similarly and substantially below the prevailing wage rate to which he was entitled for his covered work.

48. As a driver, the Employer Defendants paid Plaintiff Donza the designated "PW Rate" for four hours per day and $25 to $26 per hour for his remaining straight-time hours, and calculated his overtime on the lower regular rate. As a non-union Laborer in 2023, the Employer Defendants paid Plaintiff Donza a flat rate of $49.00 per hour, with no supplemental benefits or cash in lieu of benefits, and paid him no prevailing wage rate for any of his hours, although he worked mostly on covered projects, including school and municipal projects for LandTek and Ruttura and the Belmont Park project for Aurora. During the 2023 season, Plaintiff Donza signed certified payroll records on covered projects along with the other workers on those projects, expecting, as Defendant Kellerman had promised, that he would receive retroactive pay for his 2023 Laborer hours. He never received it.

49. The rates actually paid to Plaintiffs were substantially below the prevailing wage rates to which they were entitled for the Heavy Construction Truck Driver and Laborer – Heavy & Highway work, respectively, that they performed.

50. Plaintiffs regularly worked more than 40 hours per week during their employment with Defendants. For example, during the workweek of August 2 through August 8, 2022, Plaintiff Rene Cantarero worked 56.5 hours, and during the workweek of September 9 through September 15, 2025, Plaintiff David Cantarero worked 73 hours. Plaintiff Flores regularly

worked 14- to 15-hour days; Plaintiff Donza regularly worked 60 to 80 hours per week as a driver; and Plaintiff Navarrete regularly works 70 to 90 hours per week.

51. When the Employer Defendants paid Plaintiffs overtime compensation, the overtime rate was calculated based on the sub-prevailing hourly rates actually paid to Plaintiffs, rather than on the prevailing wage rates to which Plaintiffs were legally entitled.

52. Upon information and belief, the Employer Defendants' practice of paying Plaintiffs and other non-union drivers sub-prevailing wages was a uniform policy applied to all non-union drivers throughout the relevant time period.

53. Defendants were at all relevant times subject to NYLL Article 8 and/or § 224-a prevailing wage requirements for the projects on which Plaintiffs and the FLSA Collective worked.

54. The Employer Defendants were at all relevant times subject to the overtime requirements of the FLSA.

55. Defendants had actual or constructive knowledge that Plaintiffs and the FLSA Collective were performing work in connection with public works projects and/or covered private projects subject to prevailing wage requirements.

56. Defendants willfully failed to pay Plaintiffs and the FLSA Collective the prevailing wage rates to which they were entitled under the NYLL.

57. The Employer Defendants willfully failed to pay Plaintiffs and the FLSA Collective overtime compensation calculated on the basis of the prevailing wage rates to which they were entitled.

58. The Employer Defendants failed to provide Plaintiffs with the wage notices required by NYLL § 195(1) at the time of hiring.

59. The Employer Defendants failed to furnish Plaintiffs with wage statements that accurately reflected their correct rates of pay, their correct classifications, and the hours worked by them.

**JOINT EMPLOYER AND SINGLE INTEGRATED ENTERPRISE ALLEGATIONS**

60. At all relevant times, Defendants Setting Sun, Metro Paving, and Ruttura were joint employers of Plaintiffs and the FLSA Collective within the meaning of the FLSA and the NYLL, and operated as a single integrated enterprise with respect to their employment.

61. Defendants Setting Sun and Metro Paving jointly determined and controlled the terms and conditions of Plaintiffs' employment, including hiring, firing, work assignments, compensation, and benefits.

62. Upon information and belief, Defendants Setting Sun and Metro Paving are owned and controlled by Defendant Kellerman together with Defendant Ruttura, and share common management and control through Defendant Kellerman.

63. Defendant Kellerman told Plaintiffs and other workers directly that Ruttura and Sons Construction Co., Inc., Peter Ruttura, and Thomas Ruttura are his partners in the business.

64. Defendant Ruttura and Defendant Setting Sun share the same business address, 200 Cabot Street, West Babylon, New York.

65. Defendant Ruttura engaged Defendants' crews, including Plaintiffs, to perform the paving work on Ruttura's own projects, including the Belmont Park Redevelopment Project in Elmont, New York, and the Mather Hospital project. Upon information and belief, Defendant Ruttura did not use any other paving contractor, and Setting Sun and Metro Paving functioned as Ruttura's paving operation.

66. Defendants shared trucks and equipment. When one of Setting Sun's or Metro Paving's trucks broke down, Defendants' crews used Ruttura's trucks, and Defendant Kellerman paid Ruttura a rental charge for each day of use. Ruttura trucks were assigned alongside Defendants' own trucks on Defendants' daily job sheets.

67. Upon information and belief, Defendant Ruttura bonded projects on which Defendants' crews, including Plaintiffs, performed covered work.

68. Upon information and belief, Defendants Setting Sun, Metro Paving, and Ruttura shared employees, equipment, vehicles, and facilities in connection with their operations, and operated as a single integrated enterprise with interrelated operations, common management, centralized control of labor relations, and common ownership, including the ownership interest in Metro Paving held by Defendant Ruttura or its principals.

69. At all relevant times, Defendant Kellerman was an employer of Plaintiffs and the FLSA Collective within the meaning of the FLSA and the NYLL.

70. Defendant Kellerman had operational control over the business enterprise conducted by Defendants Setting Sun and Metro Paving.

71. Defendant Kellerman had the power to hire and fire Plaintiffs and the FLSA Collective.

72. Defendant Kellerman supervised and controlled the work schedules and conditions of employment of Plaintiffs and the FLSA Collective.

73. Defendant Kellerman determined the rate and method of payment for Plaintiffs and the FLSA Collective.

74. Defendant Kellerman maintained, or controlled the maintenance of, employment records for Plaintiffs and the FLSA Collective.

**COUNT I: BREACH OF CONTRACT (FAILURE TO PAY PREVAILING WAGES TO THIRD-PARTY BENEFICIARIES UNDER NEW YORK LABOR LAW ARTICLE 8 AND/OR § 224-A)**

*(On Behalf of Plaintiffs)*

75. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

76. At all times relevant to this Complaint, Defendants were engaged in public works projects within the meaning of NYLL Article 8 and/or covered private projects within the meaning of NYLL § 224-a.

77. NYLL Article 8, including § 220, requires that every contract for a public works project contain a stipulation that the workers employed thereon be paid not less than the prevailing wage rate and supplements for their respective classifications, as determined by the

New York State (or applicable local) fiscal officer. That stipulation is deemed incorporated into every public works contract by operation of law for the benefit of the workers performing the work. NYLL § 224-a imposes a comparable prevailing wage requirement, incorporating §§ 220 and 220-b by reference, on covered private construction projects meeting its coverage thresholds.

78. To perform the projects described above, Defendants entered into contracts with public entities, and/or with private owners of covered projects, and/or with the general contractors or upper-tier subcontractors on those projects, under which Defendants agreed, expressly or by operation of NYLL § 220 and/or § 224-a, to pay prevailing wages and supplements to all workers performing covered work, and Plaintiffs performed such covered work.

79. Upon information and belief, Defendants Ruttura, Galvin, Philip Ross, LandTek, and Aurora each entered into contracts for covered projects on which Plaintiffs worked, as general contractors or as upper-tier subcontractors, and each engaged Setting Sun and/or Metro Paving, directly or through one or more intermediate subcontractors, to perform paving and related work on those projects. By way of example, Defendant Aurora served as the general contractor on the Belmont Park Redevelopment Project, on which Defendant Ruttura served as a subcontractor and engaged Setting Sun and Metro Paving to perform the paving work. By way of further example, Defendant Galvin served as general contractor or upper-tier subcontractor on, among other projects, the Pier 76 and Stepping Stone Park projects; Defendant Philip Ross served as general contractor or upper-tier subcontractor on, among other projects, the Garden City Water District and Jericho Water District projects; and Defendant LandTek served as general contractor or upper-tier subcontractor on, among other projects, the Stimson Junior High School and Timber Point Elementary School projects; in each case engaging Setting Sun and/or

Metro Paving, directly or through an intermediate subcontractor, to perform the paving work. Those contracts required payment of prevailing wages and supplements to all workers performing covered work on those projects, including the employees of Defendants' subcontractors and sub-subcontractors, such as Plaintiffs.

80. Plaintiffs were the intended third-party beneficiaries of those contracts, which were entered into for their benefit, and which entitled them to be paid the prevailing wage rate and supplements applicable to their classification.

81. Defendants breached those contracts by failing to pay Plaintiffs the prevailing wage rates and supplements to which they were entitled, instead paying them at substantially lower hourly rates with no supplemental benefits.

82. Defendants' failure to pay prevailing wages to Plaintiffs was willful.

83. As a direct and proximate result of Defendants' breach of those contracts, Plaintiffs have suffered damages in the form of the difference between the prevailing wages and supplements to which they were entitled and the lesser amounts actually paid.

84. Plaintiffs are entitled to recover the unpaid prevailing wages and supplements, together with pre-judgment interest, post-judgment interest, and costs.

**COUNT II: UNJUST ENRICHMENT AND QUANTUM MERUIT (PLED IN THE ALTERNATIVE)**

*(On Behalf of Plaintiffs)*

85. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

86. This claim is pled in the alternative to Count I, and only to the extent Plaintiffs' claims for breach of contract as third-party beneficiaries are not sustained.

87. By failing to pay Plaintiffs the prevailing wage rates and supplements to which they were entitled for work performed on Defendants' projects, Defendants were unjustly enriched at their expense.

88. Equity and good conscience require that Defendants pay restitution to Plaintiffs.

89. Plaintiffs provided valuable services to Defendants by performing prevailing wage work for which they expected to be compensated at the prevailing wage rate. Defendants knowingly accepted the benefit of that work yet failed to pay the reasonable value of the services performed, as measured by the applicable prevailing wage rates and supplements.

90. As a result, Plaintiffs are entitled to relief under New York's common law of unjust enrichment and quantum meruit.

**COUNT III: VIOLATION OF THE FAIR LABOR STANDARDS ACT**

*(Against the Employer Defendants, on Behalf of Plaintiffs and the FLSA Collective)*

91. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

92. At all times relevant to this Complaint, Employer Defendants have been and continue to be employers engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206 and 207.

93. At all times relevant to this Complaint, Plaintiffs and the members of the FLSA Collective have been employees within the meaning of the FLSA, 29 U.S.C. § 203.

94. The FLSA requires that covered employees be paid overtime compensation at a rate not less than one and one-half times the regular rate at which they are employed for all hours worked in excess of 40 hours per workweek.

95. Plaintiffs and the members of the FLSA Collective regularly worked in excess of 40 hours per workweek.

96. Plaintiffs and the members of the FLSA Collective were legally entitled to be paid prevailing wage rates under the NYLL for the work they performed.

97. Because they were legally entitled to prevailing wage rates, the regular rate at which each was lawfully employed for purposes of calculating overtime compensation under the FLSA was the applicable prevailing wage rate for that worker's classification, not the lower sub-prevailing wage rate actually paid by Employer Defendants.

98. Employer Defendants failed to pay Plaintiffs and the members of the FLSA Collective overtime compensation calculated at one and one-half times the prevailing wage rate to which each was entitled, and instead paid overtime, when paid at all, at one and one-half times the unlawfully low sub-prevailing wage rates.

99. Employer Defendants' violations of the FLSA were willful.

100. As a direct and proximate result of Employer Defendants' violations of the FLSA, Plaintiffs and the members of the FLSA Collective have suffered damages in the form of unpaid overtime compensation.

101. Plaintiffs and the members of the FLSA Collective are entitled to recover unpaid overtime compensation, liquidated damages in an equal amount pursuant to 29 U.S.C. § 216(b), reasonable attorneys' fees, and costs.

**COUNT IV: VIOLATION OF NEW YORK LABOR LAW § 650 ET SEQ. (FAILURE TO PAY OVERTIME COMPENSATION)**

*(Against the Employer Defendants, on Behalf of Plaintiffs)*

102. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

103. NYLL § 650 et seq. and its implementing regulation, 12 N.Y.C.R.R. § 142-2.2, require employers to pay non-exempt employees overtime compensation at a rate of one and one-half times the employee's regular rate of pay for all hours worked in excess of 40 hours in a workweek.

104. At all times relevant to this Complaint, Plaintiffs were non-exempt employees entitled to the protections of NYLL § 650 et seq.

105. Plaintiffs regularly worked in excess of 40 hours per workweek.

106. Plaintiffs were legally entitled to be paid prevailing wage rates under the NYLL for the work they performed, and each one's regular rate of pay for purposes of calculating overtime compensation should therefore have been based on the applicable prevailing wage rate, not the lower sub-prevailing rate Employer Defendants actually paid.

107. Employer Defendants failed to pay Plaintiffs overtime compensation calculated at one and one-half times the prevailing wage rate to which they were legally entitled, and instead

paid overtime, when paid at all, at one and one-half times the unlawfully low sub-prevailing hourly rates.

108. Employer Defendants' violations of NYLL § 650 et seq. were willful.

109. As a direct and proximate result of Employer Defendants' violations, Plaintiffs have suffered damages in an amount to be determined at trial.

110. Plaintiffs are entitled to recover unpaid overtime compensation, liquidated damages pursuant to NYLL § 198(1-a), pre-judgment interest, and reasonable attorneys' fees and costs pursuant to NYLL §§ 198 and 663.

## COUNT V: VIOLATION OF NEW YORK LABOR LAW § 195(1) (FAILURE TO PROVIDE WAGE NOTICE)

*(Against the Employer Defendants, on Behalf of Plaintiffs)*

111. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

112. NYLL § 195(1) requires employers to provide each employee, in writing, at the time of hiring, a notice containing the employee's rate or rates of pay and the basis thereof, any allowances claimed as part of the minimum wage, the regular pay day designated by the employer, the name of the employer and any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of business and a mailing address if different, the telephone number of the employer, and such other information as the Commissioner of Labor deems material and necessary.

113. The Employer Defendants failed to provide Plaintiffs with the wage notices required by NYLL § 195(1).

114. The Employer Defendants' failure to provide wage notices caused Plaintiffs concrete harm. Without a notice stating their rates of pay and the basis for them, Plaintiffs were not informed at hire that they were entitled to the prevailing wage and supplements for all covered work, could not understand how their pay was calculated, and were unable to object to or seek correction of the split-rate pay scheme, resulting in the continued underpayment of their wages.

115. Employer Defendants' failure to provide the required wage notices was willful.

116. As a result of Employer Defendants' violations of NYLL § 195(1), Plaintiffs are entitled to recover statutory damages of fifty dollars ($50) for each workday that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, pursuant to NYLL § 198(1-b), together with reasonable attorneys' fees and costs.

## COUNT VI: VIOLATION OF NEW YORK LABOR LAW § 195(3) (FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS)

*(Against the Employer Defendants, on Behalf of Plaintiffs)*

117. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

118. NYLL § 195(3) requires employers to furnish each employee with a wage statement with every payment of wages, listing, among other things, the dates of work covered by that payment, the employee's rate or rates of pay, gross wages, deductions, and net wages, and, for non-exempt employees, the regular hourly rate, overtime rate, and the number of regular and overtime hours worked.

119. The Employer Defendants failed to furnish Plaintiffs with wage statements that accurately reflected their correct rates of pay, their correct classifications, and the hours worked and wages paid to them.

120. The Employer Defendants' inaccurate wage statements caused Plaintiffs concrete harm beyond the statutory violation itself. The statements labeled a portion of Plaintiffs' hours "PW Rate," which represented to Plaintiffs that they were being paid the prevailing wage for their covered work, while omitting their correct classifications, the applicable prevailing wage rates and supplements, and the overtime rates owed on those prevailing wage rates. As a result, Plaintiffs could not understand from their wage statements how their pay was calculated, whether they were being underpaid, or by how much; could not effectively object to or seek correction of their pay; and continued to be underpaid for their covered work week after week, delaying their receipt of the full wages owed to them.

121. Employer Defendants' failure to provide the wage statements required by NYLL § 195(3) was willful.

122. As a result of Employer Defendants' violations of NYLL § 195(3), Plaintiffs are entitled to statutory damages of two hundred fifty dollars ($250) for each workday that a violation occurred, up to a maximum of five thousand dollars ($5,000) per employee, together with reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, jointly and severally, and award the following relief:

(a) An order certifying this action as a collective action pursuant to 29 U.S.C. § 216(b), designating Plaintiffs as representatives of the FLSA Collective, and authorizing court-facilitated notice to all members of the FLSA Collective;

(b) An order directing the Employer Defendants to produce contact information for all members of the FLSA Collective;

(c) Compensatory damages in an amount to be determined at trial for all unpaid prevailing wages and supplements owed to Plaintiffs under NYLL Article 8 and/or § 224-a;

(d) Compensatory damages in an amount to be determined at trial for all unpaid overtime compensation owed to Plaintiffs and the FLSA Collective by the Employer Defendants under the FLSA and the NYLL;

(e) Liquidated damages in an amount equal to 100 percent of the unpaid overtime compensation owed by the Employer Defendants to Plaintiffs and the FLSA Collective pursuant to 29 U.S.C. § 216(b) and NYLL § 198(1-a);

(f) Statutory damages for Defendants' violations of NYLL § 195(1), pursuant to NYLL § 198(1-b);

(g) Statutory damages of two hundred fifty dollars ($250) per workday, up to a maximum of five thousand dollars ($5,000) per individual, for Defendants' violations of NYLL § 195(3), pursuant to NYLL § 198(1-d);

(h) Pre-judgment interest at the applicable statutory rate;

(i) Post-judgment interest at the applicable statutory rate;

(j) Reasonable attorneys' fees as provided by 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

(k) Costs of suit; and

(l) Such other and further relief as the Court deems just and proper.

Dated: Lynbrook, New York
November 3, 2026

Respectfully submitted,

**MARLBOROUGH LAW FIRM, P.C.**

By: ______________________

Christopher Marlborough
375 Sunrise Highway, Suite 3
Lynbrook, New York 11563
(212) 991-8960
chris@marlboroughlawfirm.com

Matthew Weinick, Esq.
**FAMIGHETTI & WEINICK, PLLC**
25 Melville Park Rd, Suite 235
Melville, New York 11747
(631) 352-0050
mbw@fwlawpllc.com

Attorneys for Plaintiffs